Blake D. Miller (4090)
James W. Anderson (9829)
**MILLER TOONE, P.C.**
165 Regent Street
Salt Lake City, Utah 84111
Telephone: (801) 363-5600
Facsimile: (801) 363-5601
E-mail: miller@millerguymon.com
         anderson@millerguymon.com

Attorneys for the Debtor

---

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **In re:** | **Bankruptcy Case No. 13-34298**<br>**Chapter 11** |
| **COTTONWOOD ESTATES**<br>**DEVELOPMENT, LLC** | |
| | **Judge R. Kimball Mosier** |
| **Debtor.** | **(Filed Electronically)** |

---

## DEBTOR'S PLAN OF REORGANIZATION DATED MAY 27, 2014

---

Dated:  May 27, 2014.

## **Table of Contents**

**ARTICLE I** :  DEFINITIONS AND INTERPRETATION.............................................5

    A.      DEFINITIONS. ........................................................................5
    B.      INTERPRETATION; APPLICATION OF DEFINITIONS AND
           RULES OF CONSTRUCTION. ......................................................10

**ARTICLE II** :  TREATMENT OF UNCLASSIFIED CLAIMS ...................................10

    2.1    Administrative Expense Claims. ...................................................10
    2.2    United States Trustee Quarterly Fees and Other Statutory Fees. ................11

**ARTICLE III** :  CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS.........11

**ARTICLE IV** :   TREATMENT OF CLAIMS AND EQUITY INTERESTS .................12

    4.1    Class 1 – Priority Tax Claims ......................................................12
    4.2    Class 2 – Other Priority Claims....................................................13
    4.3    Class 3 – Secured Claim of Salt Lake County Treasurer ...........................13
    4.4    Class 4 -- Secured Claim of America First Federal Credit Union .............13
    4.5    Class 5 – Secured Claim of TCD Holding Co., LLC .................................15
    4.6    Class 6 – General Unsecured Claims ...............................................16
    4.7    Class 7 – Interests..................................................................16

**ARTICLE V** : IDENTIFICATION OF CLAIMS AND EQUITY INTERESTS
IMPAIRED AND NOT IMPAIRED BY THE PLAN.......................................16

    5.1    Impaired and Unimpaired Classes..................................................16
    5.2    Controversy Concerning Impairment ...............................................17

**ARTICLE VI** :  ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF
REJECTION BY ONE OR MORE CLASSES OF CLAIMS .........................17

    6.1    Impaired Classes to Vote on Plan .................................................17
    6.2    Acceptance by Class of Creditors and Holders of Equity Interests ...........17
    6.3    Cramdown ..........................................................................17

**ARTICLE VII** :  MEANS FOR IMPLEMENTATION .................................................17

    7.1    Implementation of the Plan; Plan Fund......................................17
    7.2    Vesting of Assets; Release of Liens ..........................................19
    7.3    Preservation of Causes of Action ..............................................19
    7.4    Hiring of Employees; Retention of Professionals .....................19
    7.5    Compromise and Settlement ......................................................19
    7.6    Terms of Injunctions or Stays ...................................................20
    7.7    Further Assurances ................................................................20

7.8    Effects of Appeal ....................................................................................... 20
7.9    Exemption from Certain Transfer Taxes and Recording Fees.................... 21
7.10   Corporate Action ...................................................................................... 21
**ARTICLE VIII : PROVISIONS GOVERNING DISTRIBUTIONS**........................... 21

8.1    Disbursements ........................................................................................... 21
8.2    Means of Cash Distributions..................................................................... 22
8.3    No Distributions Pending Allowance ........................................................ 22
8.4    Distributions after Allowance ................................................................... 22
8.5    Setoff Rights ............................................................................................. 22
8.6    Unclaimed Distributions............................................................................ 22
8.7    Minimum Cash Distributions .................................................................... 23
**ARTICLE IX : ALLOWANCE/DISALLOWANCE OF CLAIMS**............................ 23

9.1    Claims Administration ............................................................................... 23
9.2    Estimation of Disputed Claims.................................................................. 23
9.3    Interest on Claims...................................................................................... 24
9.4    Voting and Objections ............................................................................... 24
**ARTICLE X : EXECUTORY CONTRACTS AND UNEXPIRED LEASES**.............. 24

10.1   Rejection of Contracts and Leases ............................................................ 24
10.2   Bar to Rejection Damages ......................................................................... 25
10.3   Insurance Policies...................................................................................... 25
10.4   Cure of Defaults ........................................................................................ 25
**ARTICLE XI : EFFECT OF CONFIRMATION** ....................................................... 25

11.1   Exculpation; Limitation of Liability ......................................................... 25
11.2   Injunction................................................................................................... 26
11.3   No Effect on Criminal, Tax or Environmental Statutes or Laws
       Relating .................................................................................................... 26
11.4   Deemed Consent........................................................................................ 26
**ARTICLE XII : CONDITIONS PRECEDENT** .......................................................... 27

12.1   Conditions to Confirmation ....................................................................... 27
12.2   Conditions to Effective Date ..................................................................... 27
12.3   Waiver of Conditions ................................................................................ 27
12.4   Effect of Failure of Conditions.................................................................. 28
**ARTICLE XIII : RETENTION OF JURISDICTION** ................................................. 28

13.1   Retention of Jurisdiction by the Bankruptcy Court.................................... 28
**ARTICLE XIV : MISCELLANEOUS PROVISIONS** ................................................. 29

14.1    Modification and Amendments ................................................................ 29
14.2    Revocation, Withdrawal or Non-Consummation ..................................... 29
14.3    Binding Effect; Successors and Assigns .................................................. 29
14.4    Exclusivity ............................................................................................... 29
14.5    Notices ...................................................................................................... 30
14.6    Severability of Plan Provisions ............................................................... 30
14.7    Fees of the U.S. Trustee ........................................................................... 30
14.8    Governing Law; Construction .................................................................. 30
14.9    Notice of Effective Date ........................................................................... 31
14.10   Default of Plan ......................................................................................... 31

Cottonwood Estates Development, LLC., as debtor and debtor in possession, proposes the following Chapter 11 Plan pursuant to section 1121(a) of the Bankruptcy Code:

## ARTICLE I:  DEFINITIONS AND INTERPRETATION

### A.   DEFINITIONS.

The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both the singular and plural):

1.2   *Administrative Expense Claim* means any Claim constituting a cost or expense of administration of the Chapter 11 Cases allowed under sections 503(b) (including 503(b)(9)), 507 (a)(2), and 507(b) of the Bankruptcy Code), including, without limitation, any actual and necessary costs and expenses of preserving the Debtor's estate, any actual and necessary costs and expenses of operating the Debtor's business, any actual and necessary costs and expenses of the administration and implementation of the Plan, any indebtedness or obligations incurred or assumed by the Debtor, as Debtor in Possession, during the Chapter 11 Cases, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the Debtor's estates under section 1930 of chapter 123 of title 28 of the United States Code.

1.3   *Administrative Expense Claim Bar Date* means the deadline for filing proofs of or requests for payment of Administrative Expense Claims, which shall be 60 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.

1.4   *Administrative Expense Claim Objection Deadline* means, as applicable, (a) the day that is the later of (i) the first Business Day that is at least 30 days after the Administrative Expense Claims Bar Date and (ii) as to Administrative Expense Claims filed after the Administrative Expense Claims Bar Date, the first Business Day that is at least 30 days after a Final Order is entered deeming the late filed claim to be treated as timely filed or (b) such later date as may be established by the Bankruptcy Court upon request of the Reorganized Debtor without further notice to parties-in-interest.

1.5   *Allowed* means that, with respect to a Claim, (i) such Claim has been listed by the Debtor in the Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and no contrary proof of claim has been filed, (ii) a proof of claim with respect to such Claim has been timely filed and no objection thereto has been interposed within the time period set forth in this Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or an objection thereto has been interposed and such Claim has been allowed in whole or in part by a Final Order, (iii) such Claim has been expressly allowed by a Final Order or under the Plan, or (iv) such Claim has

been compromised, settled, or otherwise resolved pursuant to the authority granted to the Reorganized Debtor pursuant to a Final Order of the Bankruptcy Court or under the provisions of this Plan; provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" under the Plan.

1.6     ***Allowed Amount*** means the amount of any Claim which is Allowed.

1.7     ***Avoidance Actions*** means any actions commenced, or that may be commenced before or after the Effective Date, pursuant to sections 544, 547, 548, 549, or 550 of the Bankruptcy Code.

1.8     ***Bankruptcy Code*** means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

1.9     ***Bankruptcy Court*** means the United States Bankruptcy Court for the District of Utah or such other court that exercises jurisdiction over the Chapter 11 Case.

1.10     ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, and any Local Rules of the Bankruptcy Court, as applicable to Chapter 11 Cases.

1.11     ***Business Day*** means any day other than a Saturday, a Sunday, or any holiday recognized by the Bankruptcy Court.

1.12     ***Cash*** means legal tender of the United States of America.

1.13     ***Causes of Action*** means any and all Claims, Avoidance Actions, and rights of the Debtor, including Claims of a Debtor against an affiliate.

1.14     ***Case*** means this Chapter 11 case, styled "In re Cottonwood Estates Development" under case number 13-34298 in the United States Bankruptcy Court, District of Utah.

1.15     ***Claim*** shall have the meaning ascribed in section 101 of the Bankruptcy Code.

1.16     ***Claims Objection Deadline*** means the date that is 120 days after the Effective Date.

1.17     ***Class*** means any group of Claims or Equity Interests classified by the Plan as set forth in Article III of the Plan.

1.18    *Collateral* means any property or interest in property of the Debtor's estate subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

1.19    *Confirmation Date* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court with respect to the Chapter 11 Case.

1.20    *Confirmation Hearing* means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.21    *Confirmation Order* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.22    *Contingent Claim* means any Claim, the liability for which attaches or is dependent upon the occurrence of, or is triggered by, an event, which event has not yet occurred as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the holder of such Claim and whether or not a relationship between the holder of such Claim and the applicable Debtor now or hereafter exists or previously existed.

1.23    *Creditor* means any Entity holding a Claim against the Debtor's estate or, pursuant to section 102(2) of the Bankruptcy Code, against property of the Debtor, that arose or is deemed to have arisen prior to or as of the Commencement Date.

1.24    *Debtor* means Cottonwood Estates Development, LLC.

1.25    *Debtor in Possession* means the Debtor in its capacity as a debtor in possession in the Case pursuant to sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

1.26    *Disclosure Statement* means the disclosure statement with respect to the Plan filed with and approved by the Bankruptcy Court in accordance with section 1125 of the Bankruptcy Code, as such disclosure statement may be amended, modified or supplemented.

1.27    *Disclosure Statement Order* means the order of the Bankruptcy Court approving the Disclosure Statement and establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

1.28    *Disputed Claim* means any Claim (including any Administrative Expense Claim) against any Debtor, proof of which was timely and properly filed, that is disputed under the Plan or as to which the Debtor has interposed a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which

objection and/or request for estimation has not been withdrawn or determined by a Final Order, and any Claim proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly filed.

1.29 ***Effective Date*** means the first Business Day after the Confirmation Date, on which (i) no stay of the Confirmation Order is in effect, and (ii) the conditions precedent to the effectiveness of the Plan have been satisfied or waived by the parties entitled to the benefit of those conditions as set forth in this Plan.

1.30 ***Entity*** means a Person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, including, without limitation, the U.S. Trustee.

1.31 ***Equity Interest*** means any ownership Interest in the Debtor.

1.32 ***Final Order*** means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Case, that has not been reversed, vacated, or stayed, and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired, and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order to not be a Final Order.

1.33 ***Impaired*** when used with respect to any Claims, Interest or Class, shall have the meaning set forth in 11 U.S.C §1124.

1.34 ***Interest*** means the membership rights of the equity holders in the Debtor.

1.35 ***IRS*** means the Internal Revenue Service, an agency of the United States Department of Treasury.

1.36 ***Lien*** means any charge against or interest in property to secure payment of a debt or performance of an obligation.

1.37 ***Person*** shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

1.38    ***Petition Date*** means December 30, 2013, the date on which the Debtor filed its voluntary petition under chapter 11 of the Bankruptcy Code.

1.39    ***Plan*** means this Plan of Reorganization, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms of the Plan.

1.40    ***Plan Fund*** means the account opened by the Reorganized Debtor after the Effective Date of the Plan pursuant to Section 7.1.

1.41    ***Plan Interest*** means the One Year London Interbank Offered Rate ("LIBOR") as published by Bankrate.com.  The Plan Interest shall be fixed as of the Effective Date for all purposes under this Plan.

1.42    ***Priority Tax Claim*** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.43    ***Pro Rata*** means, with respect to Claims, at any time, the proportion that the Allowed amount of any Claim in a particular Class or Classes bears to the aggregate Allowed amounts of all Claims in such Class or Classes, unless the Plan provides otherwise.

1.44    ***Reorganized Debtor*** means the Debtor, as reorganized as of the Effective Date in accordance with the Plan, and their successors.

1.45    ***Schedules*** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements may be supplemented or amended on or prior to the Effective Date.

1.46    ***Secured Claim*** means a Claim against the Debtor (a) secured by a valid, perfected, and unavoidable Lien on Collateral or (b) subject to setoff under sections 553, 555, 556, 559, 560, and 561 of the Bankruptcy Code, in each case to the extent of the value of the Collateral or to the extent of the amount subject to setoff, as applicable, as determined in accordance with section 506(a) of the Bankruptcy Code or as otherwise agreed to, in writing, by the Debtor or the Reorganized Debtor, as the case may be, and the holder of such Claim; provided, however, that, to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as an Unsecured Claim unless, in any such case, the Class of which such Claim is a part makes a valid and timely election in accordance with section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

1.47    *Secured Tax Claim* means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code.

1.48    *Tavaci Project* means that certain real property owned by the Debtor located in Big Cottonwood Canyon in Salt Lake County, Utah, consisting of 39 residential lots.

1.49    *Unliquidated Claim* means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

1.50    *Unsecured Claim* means any Claim that is not a Secured Claim, an Administrative Expense Claim, a Priority Tax Claim, or Other Priority Claim.

1.51    *U.S. Trustee* means the United States Trustee appointed under section 581 of title 28 of the United States Code to serve in the District of Utah.

## B.    INTERPRETATION; APPLICATION OF DEFINITIONS AND RULES OF CONSTRUCTION.

Unless otherwise specified, all section or exhibit references used in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein.  A term used herein that is not defined herein shall have the meaning ascribed to that term in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan.  In the event that a particular term of the Plan (including any exhibits or schedules hereto) conflicts with a particular term of the definitive documentation required to be implemented pursuant to the terms of the Plan or any settlement or other agreement contemplated hereunder, the definitive documentation shall control and shall be binding on the parties thereto.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

### ARTICLE II:  TREATMENT OF UNCLASSIFIED CLAIMS

### 2.1    Administrative Expense Claims.

(a)    Time for Filing Administrative Expense Claims.  The holder of an Administrative Expense Claim, other than (i) a liability incurred and payable in the ordinary course of business by a Debtor (and not past due), or (ii) an Administrative Expense Claim that has been Allowed on or before the Effective Date, must file with the Bankruptcy Court and serve on the Debtor or the Reorganized Debtor, as applicable, and the U.S. Trustee, notice of such

Administrative Expense Claim on or prior to the Administrative Expense Claim Bar Date (i.e., 60 days after the Effective Date).  Such notice must include at a minimum (A) the name of the holder of the Claim, (B) the amount of the Claim, and (C) the basis for the Claim.  **Failure to file and serve such notice timely and properly will result in the Administrative Expense Claim being forever barred and discharged.**

(b)    <u>Allowance of Administrative Expense Claims.</u>  An Administrative Expense Claim with respect to which notice has been properly filed and served pursuant to Section 2.1(a) hereof, shall become an Allowed Administrative Expense Claim if no objection is filed on or prior to the Administrative Expense Claim Objection Deadline.  If an objection is timely filed, the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order or as such Claim is settled, compromised, or otherwise resolved by the Debtor or Reorganized Debtor.

(c)    <u>Payment of Allowed Administrative Expense Claims.</u>  Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment, each Allowed Administrative Expense Claim shall be paid by the Reorganized Debtor in full, in Cash, in an amount equal to the unpaid portion of such Allowed Administrative Expense Claim (together with interest from and after the Commencement Date at the applicable non-bankruptcy rate for Administrative Expense Claims asserted under section 503(b)(1)(B) of the Bankruptcy Code) on or as soon as reasonably practicable following the later to occur of (a) the Effective Date or (b) the date on which such Administrative Expense Claim becomes an Allowed Claim; provided, however, that Allowed Administrative Expense Claims against the Debtor representing liabilities incurred in the ordinary course of business by the Debtor, as Debtor in Possession, or liabilities arising under loans or advances to or other obligations incurred by the Debtor, as Debtor in Possession, whether or not incurred in the ordinary course of business, shall be paid by the Debtor in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

## 2.2    United States Trustee Quarterly Fees and Other Statutory Fees.

All fees due and payable under section 1930 of Title 28 shall be paid within ten business days after the Effective Date.  In addition, the Reorganized Debtor shall pay the United States Trustee Quarterly Fees due and payable on all disbursements, including Plan payments and disbursements, in and outside of the ordinary course of business until entry of a Final Decree, dismissal of the Case or conversion of the Case to a case under Chapter 7 as such obligations become due.

## ARTICLE III:  CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The following table designates the Classes of Claims against and Equity Interests

in the Debtor and specifies which of those Classes are (i) impaired or unimpaired by the Plan and
(ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy
Code or (iii) deemed to reject the Plan.

| CLASS | | DESIGNATION | IMPAIRMENT | ENTITLED TO VOTE |
|---|---|---|---|---|
| 1 | Priority Tax Claims | Tax Claims | Unimpaired | No |
| 2 | Other Priority Claims | Priority Claims | Unimpaired | No |
| 3 | Secured Claim of Salt Lake County Treasurer | Secured Claim | Impaired | Yes |
| 4 | Secured Claim of America First Federal Credit Union | Secured Claim | Impaired | Yes |
| 5 | Secured Claim of TCD Holding Company, LLC | Secured Claim | Impaired | Yes |
| 6 | General Unsecured Claims | Unsecured Claims | Impaired | Yes |
| 7 | Interests | Equity Ownership Interests in the Debtor | Impaired | Yes |

## ARTICLE IV:  TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 4.1    Class 1 – Priority Tax Claims

(a)    <u>Classification</u>.  Class 1 Claim consists of Allowed Priority Tax Claims.

(b)    <u>Treatment</u>.  Except to the extent that a holder of an Allowed Priority Tax
Claim has been paid by the Debtor prior to the Effective Date or agrees to a less favorable
treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the
Reorganized Debtor, (a) cash in an amount equal to such Allowed Priority Tax Claim on the
Effective date, (b) in accordance with § 1129(a)(9)(C) of the Bankruptcy Code, equal semi-
annual cash payments in an aggregate amount equal to such Allowed Priority Tax Claim,
together with interest at the applicable non-bankruptcy rate, commencing upon the Effective
Date and continuing over a period ending not later than five years after the Effective Date, or (c)
such other treatment as shall be determined by the Bankruptcy Court to provide the holder of
such Allowed Priority Tax Claim deferred cash payments having a value, as of the Effective
Date, equal to such Allowed Priority Tax Claim.

**4.2     Class 2 – Other Priority Claims**

(a)     <u>Classification</u>.  Class 2 Claims consists of any other Allowed Priority Claims under the Bankruptcy Code.

(b)     <u>Treatment</u>.  Unless otherwise mutually agreed upon by the holder of an Allowed Other Priority Claim and the Reorganized Debtor, each holder of an Allowed Other Priority Claim shall receive, an account of their claims against the Debtor, cash in an amount equal to such Allowed Other Priority Claim on the later of the Effective Date or the date such Other Priority Claim becomes an Allowed Other Priority Claim, or as soon thereafter as is practicable.

**4.3     Class 3 – Secured Claim of Salt Lake County Treasurer**

(a)     <u>Classification</u>.  The Class 3 Claim consists of the Allowed Secured Claim of Salt Lake County Treasurer for property taxes owed on the Tavaci Project.

(b)     <u>Treatment</u>.  Unless otherwise agreed by the Debtor and the holder of the Claim of this Class, this Claim shall be paid in full through the earlier to occur of the following: (1) payment of equal quarterly installments over a term of not more than five years, with interest accruing thereon at the rate allowed pursuant to Utah law, and the first payment shall be made on the Effective Date; or (2) the sale of the Tavaci Project (or sale of each lot in the Tavaci Project, in which case the amount then due and owing for such lot shall be paid at the closing of such sale).  The Claim holder shall retain all prepetition Liens securing the Claim of this Class having the same rights and priorities accorded to such Liens as of the Petition Date.  The failure of Debtor to comply with the provisions of the Plan concerning the liability owed to the Salt Lake County Treasurer, which includes, but is not limited to, the failure to make full and timely payment, shall constitute a default of the Plan.  In the event of default, the Salt Lake County Treasurer may enforce the entire amount of its claim, exercise any and all rights and remedies under applicable non-bankruptcy law, which includes, but is not limited to, state tax collection procedures, and any other such relief as may be deemed appropriate by the Bankruptcy Court.

**4.4     Class 4 -- Secured Claim of America First Federal Credit Union**

(a)     <u>Classification</u>.  The Class 4 Claim consists of the Allowed Secured Claim of America First Federal Credit Union.

(b)     <u>Treatment</u>.  Unless the Debtor and America First Federal Credit Union otherwise agree to the Allowed Amount of the Class 4 Claim, which agreement shall be subject to approval by the Bankruptcy Court through a Rule 9019 motion, the Allowed Amount of the

Class 4 Claim shall be determined by the Bankruptcy Court or other court of competent jurisdiction as agreed upon by the Debtor, through the claims objection process (or other process as required by the applicable court or applicable provisions of the Bankruptcy Code).    The Class 4 Claim shall retain all prepetition Liens securing this Claim, having the same rights and priorities accorded such Liens as of the Petition Date.  The Class 4 Claim shall accrue simple interest from the Petition Date until paid in full at the monthly rate computed by taking the One Month LIBOR Rate as published by bankrate.com, and adding thereto 300 basis points, and dividing by 12.  The Allowed Amount of the Class 4 Claim shall be paid through the following two methods.

     a.  Under the first method of payment, as the Debtor receives an offer to purchase all or any portion of the Tavaci Project that the Debtor intends to accept, the Debtor shall provide that offer to the holder of the Class 4 Claim, who shall have through 2:00 p.m. on the next business day to assert its rights under 11 U.S.C. § 363(k) to credit bid the amount of the offer, or higher, and take the portion of the Tavaci Project which is the subject of such offer, with a reduction in the amount of the Class 4 Claim by the amount of the credit bid (the "Credit Bid Option").  In exercising the Credit Bid Option, the holder of the Class 4 Claim shall pay the commission due to any sales agent of the seller and buyer for procuring such offer, and shall either pay or take subject to all existing liens which are senior to the lien securing the Class 4 Claim on the portion of the Tavaci Project which is the subject of such offer.  If the holder of the Class 4 Claim does not timely give notice to the Debtor that it desires to exercise the Credit Bid Option, the holder of the Class 4 Claim shall irrevocably be deemed to have waived its Credit Bid Option as to that offer, and consented to the sale for the corresponding lot release price set forth in Exhibit "A" hereto.  The lot release prices set forth in Exhibit "A" hereto shall be effective until the Allowed Amount of the Class 4 Claim is determined as set forth above, after which time the remaining lot release prices will be adjusted up or down pro rata depending on whether the Allowed Amount is determined to be higher or lower than the total of lot release prices set forth in Exhibit "A".  In the event the holder of the Class 4 Claim does timely exercise the Credit Bid Option, the Debtor shall transfer such property to the holder within five (5) business days by a quit claim deed under this Plan, which shall be free and clear of all liens junior to that of the lien securing the Class 4 Claim.

     b.  Under the second method of payment, and if necessary after applying all payments from the first method of payment, the Allowed Amount of the Class 4 Claim shall be in annual installments over the four (4) twelve month periods following the Effective Date.  On the first anniversary of the Effective Date, if 25% of the Allowed Amount, plus

accrued interest, has not been paid through the first method of payment, then on such date, the Debtor shall pay the difference such that 25% of the Allowed Amount, plus accrued interest, shall have been paid.  On the second anniversary of the Effective Date, if a total of 50% of the Allowed Amount, plus accrued interest, has not been paid through the first or second methods of payment, then on such date the Debtor shall pay the difference such that 50% of the Allowed Amount, plus accrued interest, shall have been paid.  On the third anniversary of the Effective Date, if a total of 75% of the Allowed Amount, plus accrued interest, has not been paid through the first or second methods of payment, then on such date the Debtor shall pay the difference such that 75% of the Allowed Amount, plus accrued interest, shall have been paid.  On the fourth anniversary of the Effective Date, if the Allowed Amount has not been paid in full, the Debtor shall pay the necessary amount such that the Allowed Class 4 Claim shall be paid in full.  Until the Allowed Amount is determined, the second method of payment shall be based on the amount stated in the proof of claim on file as of May 7, 2014, for the Class 4 Claim.

Until such time as the Allowed Amount of the Class 4 Claim is determined, (1) the Debtor shall pay the lot release prices, (2) AFCU shall have the right to exercise the Credit Bid Option, and (3) the annual payments calculated under the second method of payment shall be made until the holder shall have received ten million dollars ($10,000,000.00) in the aggregate from all three sources, if applicable.  Thereafter, until such time as the Allowed Amount of the Class 4 Claim is determined as set forth above, in each instance where the Credit Bid Option is not exercised, the Debtor shall escrow the lot release amount in order to make the aforementioned payments.  The cumulative lot release amount is not an admission by the Debtor of the Allowed Amount of the Class 4 Claim.  The Debtor expects the Allowed Amount of the Class 4 Claim to be significantly lower.  Any and all Liens securing the Class 4 Claim shall be immediately released, reconveyed and extinguished on each lot or portion of the Tavaci Project for which the corresponding lot release price is placed in escrow by the Debtor.  If the Debtor fails to timely pay any amount due under the Plan on the Class 4 Claim, following thirty (30) days written notice of such default, and should such default not be cured within such thirty (30) day period, the holder of this Claim may enforce its rights to foreclose its Liens under applicable Utah law, which shall include, but is not limited to, Utah Code Ann. § 57-1-32.

### 4.5    Class 5 – Secured Claim of TCD Holding Company, LLC

(a)    Classification.  The Class 5 Claim consists of the Allowed Secured Claim of TCD Holding Company, LLC, which was acquired by TCD Holding Company, LLC from Bodell Construction Company, and is secured by the following: (i) Deed of Trust (with Assignment of Rents) in favor of Bodell Construction Company, effective as of January 31, 2003, and recorded on May 25, 2006 as Entry No. 9734466, in Book 9299, at Page 1771, in the Salt Lake County Recorder's office (the "**Bodell 1 DOT**"); and (ii) Deed of Trust (with

Assignment of Rents) in favor of Bodell Construction Company, effective as of January 31, 2003, and recorded on May 25, 2006 as Entry No. 9734465, In Book 9299, at Page 1765, in the Salt Lake County Recorder's Office (the "**Bodell 2 DOT**").

(b)    Treatment.  Unless already released prior to the Effective Date, the Class 5 Claim shall be extinguished, waived and released on the Effective Date, and the Bodell 1 DOT and the Bodell 2 DOT shall be reconveyed.  In the event the holder of the Class 5 Claim does not cause deeds of reconveyance to be recorded, the Debtor may do so as the attorney-in-fact for the holder of the Class 5 Claim.

### 4.6    Class 6 – General Unsecured Claims

(a)    Classification.  The Class 6 Claims consist of the Allowed Unsecured Claims against the Debtor.

(b)    Treatment.  Unless otherwise agreed by the Debtor and the holder of a specific Claim in this Class to a less favorable treatment, each holder of a Class 6 Claim shall be paid, Pro Rata, and to the extent possible, from the proceeds of the Plan Fund.  Plan Interest shall accrue on a simple, not compounding basis, on the Class 6 Claims from the Effective Date until paid in full or extinguished.  Distributions from the Plan Fund shall be made on the fifteenth day of each calendar quarter to holders of Claims in this Class, from the deposits made into the Plan Fund from the previous calendar quarter, subject to the provisions of Article VIII of the Plan. No distributions shall be made to Class 6 Claims until a Final Order has been entered determining the Allowed Amount of the Class 4 Claim.

### 4.7    Class 7 – Interests

(a)    Classification.  Class 7 consists of all Allowed Interests of the Debtor.

(a)    Treatment.  Interest holders shall retain their interests in the Debtor. Interest holders, however, will not be entitled to receive distributions pending payment of all Class 1, 2 and 6 Claims as provided in the Plan.

## ARTICLE V: IDENTIFICATION OF CLAIMS AND EQUITY INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN

### 5.1    Impaired and Unimpaired Classes

Claims and Equity Interests in Classes 1 and 2 are not impaired under the Plan. Claims and Equity Interests in Classes 3 through 8 are impaired under the Plan.

**5.2      Controversy Concerning Impairment**

In the event of a controversy as to whether any Class of Claims or Equity Interests is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

**ARTICLE VI:  ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS**

**6.1      Impaired Classes to Vote on Plan**

Each holder of a Claim or Equity Interest in an impaired Class, not otherwise deemed to have rejected the Plan, shall be entitled to vote separately to accept or reject the Plan. The Claims included in Classes 3 through 8 are impaired, and therefore are entitled to vote to accept or reject the Plan.

**6.2      Acceptance by Class of Creditors and Holders of Equity Interests**

An impaired Class of holders of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.  An impaired Class of holders of Equity Interests shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in amount of the Allowed Equity Interests of such Class that have voted to accept or reject the Plan.  An impaired Class shall be deemed to accept the Plan if there are no votes cast for such Class.

**6.3      Cramdown**

In the event that any impaired Class of Claims or Equity Interests fails to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

**ARTICLE VII:  MEANS FOR IMPLEMENTATION**

**7.1      Implementation of the Plan; Sale of Lots; Plan Fund**

The Plan shall be implemented through the means contemplated by sections 1123(a)(5), (b)(3) and (b)(4) of the Bankruptcy Code (a) prior to the Effective Date, by the Debtor and (b) on

and after the Effective Date, by the Reorganized Debtor. Pursuant to the Confirmation Order, the Debtor or the Reorganized Debtor, as applicable, may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan. Without limiting the foregoing, such transactions may include: (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (iii) the filing of appropriate certificates of incorporation, merger, or consolidation with the appropriate governmental authorities pursuant to applicable law; and (iv) all other actions the Debtor and the Reorganized Debtor determine are necessary or appropriate. The manager in existence as of the Effective Date shall remain managers after the Effective Date, unless changed pursuant to the applicable governing documents of the Debtor

In particular, the Debtor may continue to retain any and all real estate brokers, retain new real estate brokers, and retain multiple real estate brokers to assist in the sale of the Tavaci Project, including lots therein, without further Bankruptcy Court approval. The Debtor may pay any and all real estate brokers without further Bankruptcy Court approval, except for any sales made prior to the Effective Date. The Debtor may continue to sell the Tavaci Project, including lots therein, free and clear of any and all liens, claims and interests, with all such liens, claims and interests to be paid pursuant to the Plan, or attach to the sales proceeds as allowed by the Plan. To the extent the Plan does not specify paying a lien, claim or interest, or having such lien, claim or interest attach to sales proceeds, then such lien, claim or interest shall be extinguished. The to extent a lien, claim or interest holder is unwilling or unable to execute a document releasing such lien, claim or interest in a timely manner, and the Debtor, buyer, or a title company requires such a document to complete a sale, the Debtor is authorized to execute such a release and have the same recorded as the attorney-in-fact for such lien, claim or interest holder.

The Debtor may sell the Tavaci Project, or lots therein, pursuant to any commercially reasonable terms, in the Debtor's business judgment, including seller financing, so long as there are sufficient cash proceeds to pay Allowed Claims which are required by the Plan to be paid at the closing of a sale. The Debtor may pay any and all costs at the closing of a sale with are customary and reasonable in the Debtor's business judgment, from the proceeds of such sale, or from the Debtor's other funds. The Debtor may employ contractors and repairmen for ordinary and necessary maintenance and repair of the Tavaci Project, and may participate and operate any owners association(s) related to the Tavaci Project.

Plan Fund. On the Effective Date the Debtor shall establish a new federally-insured demand deposit account for the deposit of monies to pay the Class 1, 2, and 6 Claims (the "Plan Fund"). From the Effective Date until all Class 1, 2, and 6 Claims are paid in full, the Debtor shall deposit 90% of its calendar quarter net income from all operations, which shall be calculated after deducting actual payments of Class 3 and 4 Claims. The Debtor shall make this

deposit no less frequently than one time per calendar quarter, on the last business day of such calendar quarter.

### 7.2      Vesting of Assets; Release of Liens

Except as otherwise provided in the Plan or any agreement, instrument, or other document relating thereto, all property in the Estate and any property acquired by the Debtor shall vest in the Reorganized Debtor on the Effective Date.  Thereafter, the Reorganized Debtor may manage its assets and may use, acquire, dispose of property, and settle or compromise Claims or Interests, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules. Except as provided in this Plan or any contract, instrument, release or other agreement created in connection with this Plan, on the Effective Date, all liens, claims and encumbrances against the property of the Reorganized Debtor shall be fully and completely released and discharged and all such assets or property shall be free and clear of any such liens, claims and encumbrances.

### 7.3      Preservation of Causes of Action

In accordance with section 1123(b)(3) of the Bankruptcy Code, and except as otherwise provided in the Plan, all Causes of Action transferred to the Reorganized Debtor shall be retained by the Reorganized Debtor, and shall have the power and authority to prosecute and defend all such Causes of Action.

### 7.4      Hiring of Employees; Retention of Professionals

The Reorganized Debtor is authorized, without further order of the Bankruptcy Court, to hire such employees and retain such professionals as it may deem necessary to discharge its obligations, and the costs of such employment and other expenditures shall be paid by the Reorganized Debtor without further approval of the Bankruptcy Court.

### 7.5      Compromise and Settlement

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the Reorganized Debtor may, subject to approval of the Bankruptcy Court, compromise and settle Claims against the Reorganized Debtor or any claims the Reorganized Debtor or the Estate may have against other Persons.  The Debtor hereby reserves the right, with approval of the Bankruptcy Court, to compromise and settle Claims against the Debtor or claims the Debtor or the Estate may have against other Persons up to and including the Effective Date.  On the Effective Date, such rights shall pass to the Reorganized Debtor, and thereafter, Claims against the Reorganized Debtor or claims the Reorganized Debtor or the Estate may have against other Persons may be compromised and settled exclusively by the Reorganized Debtor, without approval of the Bankruptcy Court; provided, however, that approval of the Bankruptcy Court, on

appropriate application, shall be required for any such compromise or settlement (a) with any "insider" of the Reorganized Debtor, as such term is defined in section 101(31) of the Bankruptcy Code, or (b) with respect to any Allowed Unsecured Claim, where the amount compromised (not meaning the full amount of such Claim) is in excess of $100,000.

### 7.6    Terms of Injunctions or Stays

Unless otherwise provided herein, all injunctions or stays provided for in the Case pursuant to sections 105 or 362 of the Bankruptcy Code or otherwise in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.  If the Plan is not confirmed, all such injunctions or stays shall remain in full force and effect until ordered otherwise by the Bankruptcy Court or until an alternative plan of reorganization is confirmed in the Reorganized Debtor's Chapter 11 Case or the Reorganized Debtor's Chapter 11 Case is dismissed.  Except as may be determined otherwise by Final Order of the Bankruptcy Court, or as otherwise provided in the Plan, all distributions and transfers of property pursuant to the Plan shall be made free and clear of all liens, claims and encumbrances and, on the Confirmation Date, all holders of Claims or Interests shall be permanently enjoined from and restrained against commencing or continuing any suit, action or proceeding against the Reorganized Debtor, or asserting against the Reorganized Debtor or the assets or property thereof, any claim, interest or cause of action based upon any act or omission, transaction or other activity of any kind that occurred prior to Confirmation.

### 7.7    Further Assurances

On the Effective Date or as soon as reasonably practical thereafter, the Debtor, the Reorganized Debtor are authorized to and may issue, execute, deliver, file or record all Documents and such other contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

### 7.8    Effects of Appeal

Unless the Confirmation Order is stayed pending a timely appeal therefrom, at the option of the Debtor, the Plan may be consummated notwithstanding the pendency of an appeal from the Confirmation Order or the timely service or filing of a motion under Bankruptcy Rules 7052, 8002, 8003, 8015, 9023 or 9024.

**7.9      Exemption from Certain Transfer Taxes and Recording Fees**

Pursuant to Section 1146(c) of the Bankruptcy Code, any transfer from the Debtor to the Reorganized Debtor pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (i) the issuance, transfer, or exchange of any debt, equity security, or other interests in the Debtor or the Reorganized Debtor; (ii) creation, modification, consolidation, or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iii) the making, assignment, or recording of any lease or sublease; or (iv) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**7.10      Corporate Action**

Each of the matters provided for by the Plan involving the corporate structure of the Reorganized Debtor or corporate or related actions to be taken by or required of the Reorganized Debtor shall, as of the Effective Date, be deemed to have occurred and be effective as provided in the Plan (except to the extent otherwise indicated), and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by members, creditors, or managers of the Reorganized Debtor.  Without limiting the foregoing, such actions may include:  the adoption and filing of amendments to the Reorganized Debtor's articles of organization or operating agreement; and the appointment of managers and officers for the Reorganized Debtor

**ARTICLE VIII:  PROVISIONS GOVERNING DISTRIBUTIONS**

**8.1      Disbursements**

The Reorganized Debtor or its designee shall make or cause to be made all distributions required under the Plan.  All distributions made under the Plan shall be made to holders of Allowed Claims as of the Distribution Record Date (a) if any such holder has filed a proof of claim, at the address of such holder as set forth in the proof of claim, or (b) if any such holder has not filed a proof of claim, at the last known address of such holder according to the Debtor's books and records.

21

Neither the Debtor nor the Reorganized Debtor shall have any obligation to recognize any purported transfer of a Claim after the Distribution Record Date, and will be entitled for all purposes relating to the Plan to recognize and deal only with those holders of Claims shown on the books of the Debtor as of the close of business on the Distribution Record Date.

**8.2    Means of Cash Distributions**

Payments made pursuant to the Plan shall be in lawful U.S. currency and by the means agreed to by the payor and the payee, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Reorganized Debtor shall determine.

**8.3    No Distributions Pending Allowance**

No payments or distributions shall be made with respect to any Claim to the extent such Claim is a Disputed Claim unless and until all objections to such Disputed Claim are withdrawn or overruled by the Bankruptcy Court and such Claim becomes an Allowed Claim.

**8.4    Distributions after Allowance**

Distributions shall be made as appropriate to the holder of any Disputed Claim that has become an Allowed Claim on the date such Disputed Claim becomes an Allowed Claim or as soon thereafter as practicable.  Such distributions shall be based upon the cumulative distributions that would have been made to the holder of such Claim under the Plan if the Disputed Claim had been an Allowed Claim as of the Effective Date and shall not be limited by the amounts reserved with respect to such Disputed Claim to the extent that additional amounts are available therefore, but only to the extent that such additional amounts have not yet been distributed to holders of Allowed Claims.  No interest shall be payable to holders of Disputed Claims.

**8.5    Setoff Rights**

The Reorganized Debtor may, but shall not be required to, set off against or recoup from any Claim and the distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtor may have against the holder of such Claim; provided that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim against such holder.

**8.6    Unclaimed Distributions**

If a distribution made by the Reorganized Debtor pursuant to the Plan is returned as undeliverable or the holder has failed to deposit or negotiate the applicable check within 180

22

days of issuance (collectively, "Unclaimed Distributions"), the distribution shall be held by the Reorganized Debtor.  The Reorganized Debtor shall make reasonable efforts to determine the then-current address of such holder, and no further distributions shall be made to such holder unless and until the Reorganized Debtor determines or is notified of such holder's current address, at which time all missed distributions shall be made, without interest; provided, however, that such distributions shall be deemed to be unclaimed property under section 347(b) of the Bankruptcy Code if not claimed by 180 days after the distribution was initially attempted, notwithstanding any federal or state escheat laws to the contrary.  After such date, (a) all rights to Cash, or other distributions shall be forfeited and such Cash or other property shall be revested in the Reorganized Debtor and the claim of such holder to such Cash or other distribution pursuant to the Plan shall be discharged and forever barred, and (b) all rights to such distributions shall be forfeited.

### 8.7    Minimum Cash Distributions

No payment of less than fifty dollars ($50) shall be made to any holder of an Allowed Claim unless requested in writing to the Reorganized Debtor prior to 30 days prior to the Liquidation Fund Distribution Date.  If no such request is timely received, all Cash attributable to such holders shall be treated under the Plan as Unclaimed Distributions.

### ARTICLE IX:  ALLOWANCE/DISALLOWANCE OF CLAIMS

### 9.1    Claims Administration

Unless otherwise ordered by the Bankruptcy Court, from and after the Effective Date, the sole and exclusive authority to administer, dispute, object to, compromise or otherwise resolve Claims shall belong to the Reorganized Debtor.  Subject to the foregoing, the Reorganized Debtor may dispute any Claim evidenced by a proof of claim or request for payment filed with the Bankruptcy Court by filing and serving on the holder thereof an objection in accordance with the Bankruptcy Code, the Bankruptcy Rules or a Final Order of the Bankruptcy Court.  Except as otherwise provided herein, if the Reorganized Debtor disputes any Claim for which a proof of claim has been filed, the Reorganized Debtor must File and serve on the holder of the Disputed Claim an objection on or before the Claims Objection Deadline..

### 9.2    Estimation of Disputed Claims

The Debtor or Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any Disputed Claim subject to estimation under section 502(c) of the Bankruptcy Code, including any Disputed Claim for taxes to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether any party in interest previously objected to such Claim, and the Bankruptcy Court shall retain jurisdiction to estimate any Disputed Claim pursuant to

section 502(c) of the Bankruptcy Code at any time during litigation concerning any objection to the Claim. Disputed Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism set forth in the Plan or approved by the Bankruptcy Court.

### 9.3      Interest on Claims

Unless specifically provided in the Plan or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the respective Petition Date on any Claim.  Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final distribution is made thereon.

### 9.4      Voting and Objections

Failure by the Debtor or the Reorganized Debtor to object to or examine any Claim or Interest for purposes of voting in favor of or against the Plan shall not be deemed a waiver of the Debtor's, the Reorganized Debtor or any other Person's rights to object to, or re-examine, such Claim or Interest, in whole or in part, for purposes of allowance or distribution.

### ARTICLE X:  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 10.1      Rejection of Contracts and Leases

Other than as set forth in the Plan, all executory contracts and unexpired leases that exist between or among the Debtor and any other Person shall be deemed rejected by operation of this Plan pursuant to section 365(a) of the Bankruptcy Code on the Effective Date, except for any such contract or lease (a) that has been assumed or rejected, or renegotiated and assumed on modified terms, pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (b) that has been entered into by the Debtor during the pendency of the Chapter 11 Case in the ordinary course of business or pursuant to an order of the Bankruptcy Court, (c) that is the subject of a motion to assume or reject, or a motion to approve renegotiated terms and to assume or reject on such terms, Filed prior to the Effective Date, or (d) that is specifically treated otherwise in the Plan or in the Confirmation Order.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to section 365(a) of the Bankruptcy Code, of the rejection of executory contracts and unexpired leases as provided for herein. Notwithstanding anything to the contrary in the Plan, and other than those already assumed pursuant to the Plan, not less than ten (10) days prior to the Confirmation Hearing, the Debtor shall provide a list of executory contracts and unexpired leases being assumed by operation of the Plan pursuant to section 365(a) of the Bankruptcy Code, or the same shall otherwise be deemed rejected.

**10.2    Bar to Rejection Damages**

Claims arising from the rejection of the Debtor's executory contracts or unexpired leases shall be treated as General Unsecured Claims.  The holder thereof shall File a proof of claim by the date fixed in such rejection order or, if no deadline is specified in such order, within thirty (30) days of the effective date of the rejection of such contract or lease or shall be forever barred. Objections to such Claims shall be Filed and served by the Claims Objection Deadline.

**10.3    Insurance Policies**

Notwithstanding anything to the contrary contained in the Plan, the Debtor's insurance policies and any agreements, documents or instruments relating thereto shall be deemed to be and treated as though they are executory contracts, and shall be assumed as of the Effective Date by operation of the Plan pursuant to sections 365(a) and 1123(b) of the Bankruptcy Code.  Nothing contained herein shall constitute or be deemed a waiver of any Cause of Action against any insurer or any other Person (except as otherwise provided herein) under any of the Debtor's policies of insurance or otherwise, or in any way to limit the obligation of such insurers to defend, indemnify, and/or hold harmless the Debtor under the terms of any insurance policy issued to the Debtor.

**10.4    Cure of Defaults**

The Debtor asserts it is not in default in any of its leases or executory contracts. Nevertheless, to the extent that is proven incorrect and an order is issued by the Bankruptcy Court requiring a cure, then on the Effective Date, the Debtor and the Reorganized Debtor shall (a) cure or provide adequate assurance that they will cure any and all undisputed defaults under any executory contract or unexpired lease assumed pursuant to the Plan and (b) compensate or provide adequate assurance that they will promptly compensate the other parties to such executory contract or unexpired lease for the agreed amount of any actual pecuniary loss to such party resulting from such undisputed default in accordance with section 365(b)(1) of the Bankruptcy Code.  In the event that the Debtor disputes the existence of a default, or the nature, extent or amount of any required cure, adequate assurance or compensation, the Debtor's and the Reorganized Debtor's obligations under section 365(b) of the Bankruptcy Code shall be determined by a Final Order, and any such obligations shall be performed by the Reorganized Debtor unless otherwise provided in such Final Order.

**ARTICLE XI:  EFFECT OF CONFIRMATION**

**11.1    Exculpation; Limitation of Liability**

Except as otherwise specifically provided in the Plan, the Debtor, or any of its present or former agents or professionals (including all of the respective predecessors, successors and assigns of any of the foregoing) shall not incur, and are hereby released from, any claim, obligation, cause of action or liability to any holder of a Claim or Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, for any act or omission in connection with, or arising out of the negotiation, documentation or implementation of the transactions contemplated herein (including the consideration of alternatives to the Plan (if any)), the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, in all cases except for their gross negligence or willful misconduct, and in all cases only to the extent provided in applicable Utah state or United States federal law governing the State of Utah or this 10th Federal Circuit; provided, however, that in all respects, such persons shall be entitled to all defenses provided in Utah state or United States federal law governing the State of Utah or this 10th Federal Circuit, including reliance upon the advice of counsel.

**11.2    Injunction**

The exculpation and release pursuant to the preceding paragraph hereof shall act as an injunction against the commencement or continuation of any action, employment of process or act to collect, offset or recover any Claim or Cause of Action so satisfied and released to the fullest extent permitted under the Bankruptcy Code.

**11.3    No Effect on Criminal, Tax or Environmental Statutes or Laws Relating**

Nothing in this Plan or in the Confirmation Order releases any entity from any liability to the United States or the State of Utah under any criminal or tax law or any police or regulatory statute enforceable by the United States or the State of Utah, nor shall anything in the Confirmation Order or Plan discharge any Claim of the United States or the State of Utah under any environmental statute or regulation or any law or legal principal prohibiting fraud.

**11.4    Deemed Consent**

By accepting distributions under and pursuant to the Plan, each holder of an Allowed Claim receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions and exculpations set forth in this Article.

## ARTICLE XII:  CONDITIONS PRECEDENT

### 12.1    Conditions to Confirmation

Except as expressly waived, the Plan shall be null and void and have no force or effect unless the Bankruptcy Court shall have entered the Confirmation Order, which shall be a Final Order and which order shall:

(a)    confirm the Plan without modification except as modified by the Debtor in accordance herewith;

(b)    be in form and substance acceptable to the Debtor;

(c)    declare that the provisions of the Confirmation Order shall not be severable and are mutually dependent;

(d)    declare that the transfer of the Debtor's assets, including the transfer of ownership of all remaining real property to the Reorganized Debtor shall be free from any and all recordation and transfer taxes; and

(e)    declare that the Debtor has solicited acceptances of the Plan in good faith and in compliance with the Bankruptcy Code and that the Debtor and each of its affiliates, agents, directors, officers, employees, advisors and attorneys have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and therefore are not liable for the violation of any applicable law, rule or regulation governing the solicitation of votes on the Plan.

### 12.2    Conditions to Effective Date

Except as expressly waived, a condition precedent to the Effective Date is the entry of the Confirmation Order, in form and substance acceptable to the Debtor, and no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall be pending, provided that, if an appeal of the Confirmation Order or any other such order is Filed but no stay is granted in connection therewith, the Debtor may elect to permit the Effective Date to occur notwithstanding pendency of appeal.

### 12.3    Waiver of Conditions

All of the conditions precedent for confirmation may be waived by the Debtor without any notice to parties in interest or the Bankruptcy Court and without a hearing, unless waiver is prohibited by law.

**12.4    Effect of Failure of Conditions**

In the event that the conditions for confirmation have not been satisfied or waived on or before sixty (60) days after the Confirmation Date, then upon written notification filed by the Debtor with the Bankruptcy Court (a) the Confirmation Order shall be vacated, (b) no distributions under the Plan shall be made, (c) the Debtor and all holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (d) all obligations of the Debtor with respect to the Claims and Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims against the Debtor or any claims of the Debtor against any other Person or to prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

## ARTICLE XIII:  RETENTION OF JURISDICTION

**13.1    Retention of Jurisdiction by the Bankruptcy Court**

By operation of the Plan, the Bankruptcy Court, pursuant to section 105(a) and 1142 of the Bankruptcy Code, shall retain jurisdiction over the Case only:

(a)    to hear and determine pending motions for the assumption or rejection of executory contracts or unexpired leases or the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine the allowance of Claims resulting therefrom including cure amounts, if any, required;

(b)    to hear and determine any and all objections to the allowance or estimation of Claims;

(c)    to hear and determine such litigation as may be commenced by the Debtor or the Reorganized Debtor in the Bankruptcy Court before or after the Effective Date to collect assets of the Debtor;

(d)    to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(e)    to hear and determine applications for allowance of Professional Fee Claims and all other applications for fees or reimbursement of expenses under the Plan or under sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code;

(f)    to determine requests for the payment of Claims under section 507(a)(1) of the Bankruptcy Code, including compensation and expenses of parties entitled thereto; and

(g)    promptly after satisfaction of the matters set forth in (a) through (f) hereof, to enter a final decree closing the Chapter 11 Case.

28

## ARTICLE XIV:  MISCELLANEOUS PROVISIONS

### 14.1     Modification and Amendments

The Debtor may alter, amend or modify the Plan in accordance with section 1127(a) of the Bankruptcy Code at any time prior to Confirmation.  On and after the Confirmation Date but prior to substantial consummation of the Plan as defined in section 1101(2) of the Bankruptcy Code, the Debtor may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially adversely affect the treatment of holders of Claims or Interests under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or any orders of court.

### 14.2     Revocation, Withdrawal or Non-Consummation

The Debtor shall have the right to revoke or withdraw the Plan at any time prior to the Effective Date.  If revoked or withdrawn prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, then the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Class), the assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed or to be executed pursuant to the Plan shall be null and void and of no effect.  In such event, nothing contained herein, and no acts taken to implement the Plan, shall be deemed to constitute a waiver or release of any Claims against the Debtor or any other Person or any claims by the Debtor or the Debtor against any Person, to prejudice in any manner the rights of the Debtor, the Debtor or any Person in any further proceedings involving the Debtor or to constitute an admission of any sort by the Debtor or any other Person.

### 14.3     Binding Effect; Successors and Assigns

On the Effective Date, the Plan shall be binding upon, and inure to the benefit of, the Debtor and all present and former holders of Claims or Interests, and their respective successors and assigns, whether or not the Claims or Interests of such holders are Impaired under the Plan and whether or not such holders have accepted the Plan.

### 14.4     Exclusivity

The Debtor shall have the exclusive right to amend or modify the Plan and to solicit acceptances of any amendments or modifications through the Effective Date.

29

### 14.5    Notices

Any notice required or permitted under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, or (iii) overnight delivery service, and (c) deemed to have been given or made when actually delivered, to the following addresses:

If to the Debtor:

Cottonwood Estates Development, LLC
Attn: Terry Diehl and Michael Christensen
4198 Prospector Dr.
Salt Lake City, Utah  84121

with a copy to:

Blake D. Miller
James W. Anderson
Miller Toone, P.C.
165 Regent Street
Salt Lake City, UT 84111
Telephone: 801/363-5600
Facsimile: 801/363-5601

### 14.6    Severability of Plan Provisions

In the event that the Bankruptcy Court determines, prior to the Effective Date, that any provision in the Plan is invalid, void or unenforceable, the Debtor may, at its discretion, (a) treat such provision as invalid, void or unenforceable, in which case such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan, or (b) alter, amend, revoke, or withdraw the Plan.

### 14.7    Fees of the U.S. Trustee

All fees payable pursuant to section 1930 of title 28 of the U.S. Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Effective Date.  After the Effective Date, the Reorganized Debtor shall pay all required fees pursuant thereto without further order of the Bankruptcy Court.

### 14.8    Governing Law; Construction

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated in any agreement, document or instrument executed in connection with the Plan, the substantive and procedural laws of the

State of Utah shall govern the construction and implementation of the Plan, and any agreements, documents and instruments executed in connection with the Plan, without reference to any conflict or choice of laws principles.  To the extent the provisions of the Plan conflict with the terms and conditions of any other agreement, document or instrument executed in connection herewith) the provisions of the Plan shall govern.

### 14.9    Notice of Effective Date

The Reorganized Debtor shall give notice of the occurrence of the Effective Date to all creditors and parties in interest which states all relevant bar dates set forth in this Plan.

### 14.10   Default of Plan

This Plan is a contract between the Debtor and its creditors.  In the event that a holder of an Allowed Claim believes the Debtor is in default under the Plan, such holder may assert remedies available to it under applicable state law and the Bankruptcy Code for such default.

DATED this 27th day of May, 2014.

**Cottonwood Estates Development, LLC**
**Debtor and Debtor in Possession**

By:    /s/ Terry C. Diehl
By:    /s/ Michael Christensen

MILLER TOONE, P.C.

 /s/ James W. Anderson
Blake D. Miller
James W. Anderson
165 South Regent Street
Salt Lake City, Utah 84111
Telephone: (801) 363-5600
Facsimile: (801) 363-5601
Attorneys for the Debtor

**EXHIBIT "A" TO DEBTOR'S MODIFIED PLAN OF REORGANIZATION**
**LOT RELEASE PRICES**



March 28, 2014

| Lot | Release Price |
|---|---|
| 2 | $ 446,429 |
| 3 | $ 642,857 |
| 4 | $ 857,143 |
| 5 | $ 750,000 |
| 6 | $ 928,571 |
| 7 | $ 553,571 |
| 8 | $ 492,857 |
| 9 | $ 510,714 |
| 10 | $ 489,286 |
| 11 | $ 642,857 |
| 12 | $ 607,143 |
| 13 | $ 678,571 |
| 14 | $ 696,429 |
| 15 | $ 678,571 |
| 16 | $ 696,429 |
| 17 | $ 857,143 |
| 19 | $ 710,714 |
| 21 | $ 600,000 |
| 22 | $ 571,429 |
| 23 | $ 678,571 |
| 24 | $ 492,857 |
| 25 | $ 489,286 |
| 26 | $ 446,429 |
| 27 | $ 364,285 |
| 28 | $ 392,857 |
| 29 | $ 392,857 |
| 30 | $ 389,286 |
| 31 | $ 425,000 |
| 32 | $ 439,286 |
| 33 | $ 375,000 |
| 35 | $ 353,571 |
| 36 | $ 367,857 |
| 37 | $ 353,571 |
| 38 | $ 371,429 |
| 39 | $ 375,000 |
| 40 | $ 382,143 |
| 41 | $ 464,286 |
| 42 | $ 425,000 |
| 43 | $ 410,714 |
| | $ 20,800,000 |